[705 NYS2d 674]

In the Matter of MELVIN G. DUKE (Admitted as MELVIN GORDON-ANTHONY DUKE), an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE SECOND AND ELEVENTH JUDICIAL DISTRICTS, Petitioner.

Second Department, April 10, 2000

## APPEARANCES OF COUNSEL

*Robert H. Straus,* Brooklyn (*Diana J. Szochet* of counsel), for petitioner.

*Jerome Karp, P. C.,* Brooklyn, for respondent.

## OPINION OF THE COURT

Per Curiam.

The respondent was served with a petition containing five charges of professional misconduct. The Special Referee sustained all five charges. The Grievance Committee now moves to confirm the Special Referee's report and to impose such discipline upon the respondent as the Court deems necessary and proper. The respondent has submitted an affirmation requesting that the Court consider certain evidence in mitigation and impose such discipline as it deems appropriate.

Charge One alleged that the respondent converted funds entrusted to him as a fiduciary incident to his practice of law, in violation of Code of Professional Responsibility DR 9-102 (B) (22 NYCRR 1200.46 [b]).

On or about January 15, 1997, the respondent deposited $4,293 into his attorney escrow account on behalf of an individual named Rollins. The respondent was entrusted with those funds as a fiduciary incident to his practice of law. Although the respondent was required to maintain $4,293 in his escrow account on behalf of Rollins from January 15, 1997 through June 18, 1997, the balance was depleted to $3,399.25 on February 26, 1997. On June 18, 1997, the respondent's attorney escrow check in the sum of $4,293 payable to Sutton Land Services on behalf of Rollins was returned for insufficient funds.

Charge Two alleged that the respondent commingled funds entrusted to him as a fiduciary incident to his practice of law, with his business and personal funds, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).

Between January 1997 and December 1997, the respondent issued checks drawn on his attorney escrow account to pay for business and personal expenses. During that period, the respondent deposited personal funds and legal fees into the escrow account, when funds entrusted to the respondent as a fiduciary incident to his practice of law were on deposit in the escrow account.

Charge Three alleged that the respondent improperly drew an escrow check payable to cash in the sum of $35 on February 4, 1997, in violation of Code of Professional Responsibility DR 9-102 (e) (22 NYCRR 1200.46 [e]).

Charge Four alleged that the respondent failed to maintain required bookkeeping records, in violation of Code of Professional Responsibility DR 9-102 (d) (22 NYCRR 1200.46 [d]). Between January 1997 and December 1997, the respondent failed to maintain a ledger book or similar record of deposits into and withdrawals from his attorney escrow account.

Charge Five alleged that the respondent failed to timely cooperate with the legitimate demands of the Grievance Committee, in violation of Code of Professional Responsibility DR 1-102 (a) (5) and (8) (now [7]) (22 NYCRR 1200.3 [a] [5], [7]) and 22 NYCRR 691.4 (*l*).

By letter dated July 29, 1997, the Grievance Committee forwarded to the respondent a copy of a dishonored check report which had been received from the Lawyers' Fund for Client Protection of the State of New York (hereinafter the Lawyers' Fund), and directed the respondent to submit a written answer within 20 days, along with escrow records for six months. The respondent failed to answer.

By certified letter dated September 25, 1997, the Grievance Committee directed the respondent to submit his written answer and banking records within 10 days and warned him that he risked suspension if he failed to cooperate. The Grievance Committee received the respondent's answer on October 6, 1997.

By letter dated October 16, 1997, the Grievance Committee forwarded to the respondent a copy of a second dishonored check report which had been received from the Lawyers' Fund, and directed the respondent to submit a written answer within 20 days. The respondent failed to answer.

By certified letter dated December 10, 1997, the Grievance Committee directed the respondent to submit his written answer within 10 days and warned him that he risked suspension if he failed to cooperate. The Grievance Committee received the respondent's answer on January 20, 1998.

By letter dated June 30, 1998, the Grievance Committee directed the respondent to telephone its offices to arrange for an investigative appearance. By certified letter dated July 20, 1998, the Grievance Committee directed the respondent to appear on August 19, 1998. The respondent appeared as directed.

By letter dated August 19, 1998, pursuant to an agreement reached with the respondent in connection with his investigative appearance, the respondent was directed to furnish additional information within 14 days. The respondent failed to comply.

On September 25, 1998, the Grievance Committee left a telephone message for the respondent concerning his failure to submit the information requested. The respondent's time to submit the requested information was extended until October 12, 1998. The respondent failed to comply.

On October 14, 1998, the Grievance Committee left the respondent a further telephone message directing him to submit the information requested or risk suspension. The respondent finally submitted the requested information on October 16, 1998.

Based on the respondent's admissions and the evidence adduced, the Special Referee properly sustained all five charges. The Grievance Committee's motion to confirm the Special Referee's report is granted.

In determining an appropriate measure of discipline to impose, the respondent asks the Court to consider that his actions were a matter of negligence and did not arise out of any intent to deprive his clients of the funds entrusted to him. The respondent asserts that he replaced all necessary funds before receiving any complaint and that the dishonored check payable to Sutton Land Services was redeposited and cleared the account. He points to his candor before the Special Referee, his expressed remorse, his exemplary record of civic service, the lack of any disciplinary history, and the fact that no client suffered any harm as a result of the respondent's negligence. The respondent emphasizes that whatever errors he might have committed did not involve moral turpitude.

The Grievance Committee disputes the respondent's assurances that he can properly allocate his time and will not make the same mistakes again in light of his continued involvement in Caribbean politics and his plans to run for political office in Guyana in the future. Moreover, the Grievance Committee attacks the respondent's credibility by virtue of his admissions that he certified falsely to the Office of Court Administration that he was in compliance with the rules pertaining to the maintenance of attorney escrow accounts.

Notwithstanding the respondent's alleged lack of venality, he is guilty of conversion and other serious acts of professional misconduct which warrant his disbarment.

BRACKEN, J. P., O'BRIEN, RITTER, SANTUCCI and LUCIANO, JJ., concur.

Ordered that the petitioner's motion to confirm the report of the Special Referee is granted; and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent Melvin G. Duke is disbarred, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent shall promptly comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (*see,* 22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately Melvin G. Duke is commanded to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.